## Green v. Melton, et al.

(Decided March 26, 1920.)

### Appeal from Muhlenberg Circuit Court.

Deeds—Action for Rescission of Deeds—Evidence.—In an action for the rescission of a deed upon the ground of fraudulent representations that no coal had been removed from under one of two tracts conveyed, evidence held insufficient to sustain such a charge where it is proven that plaintiff's husband, acting as her agent in the purchase, was shown one or more old abandoned entries and other evidences that considerable coal had been removed from the mineral tract.

WALKER WILKINS for appellant.

TAYLOR, EAVES & SPARKS for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

As the trade was finally consummated the appellees, Charles Melton and his wife, sold and conveyed to the appellant, Maggie Green, thirty acres of land and "also all of the coal and mineral underlying 14½ acres of surface" adjoining the thirty acre tract of land. The consideration was $1,500.00, of which $700.00 was paid in cash and the balance was evidenced by three notes due in one, two and three years. The deed is dated January 4, 1915, and immediately after its execution Mrs. Green and her husband, C. N. Green, moved into the six-room frame dwelling house located upon the thirty acre tract, and took possession of the whole of same.

On April 8, 1915, Mrs. Green filed this action against Melton and his wife seeking a rescission of the deed upon the ground as stated in her petition "that she was induced to-purchase the said 30 acre tract of surface with the improvements thereon, and the said fourteen and one-half acres of coal and mineral as aforesaid, by the false and fraudulent statements and misrepresentations made to her agent by defendant, Charles Melton, that there was then good, solid, workable and merchantable coal under all of the said fourteen and one-half acres of surface none of which had ever been worked out, mined or removed, whilst as a matter of fact nearly all of the vein of coal known as ——— coal had then been worked out, mined and removed from under the said fourteen and one-half acres of surface all of which was known to the said defendant when he made said statements and representations to plaintiff and her agent and entered into said contract of sale as aforesaid; that this plaintiff did not know that said coal or any part thereof had been mined or removed therefrom when she entered into said contract of purchase and wholly relied upon the statements and representations of defendant, Charles Melton, made to her as aforesaid, as to said coal being under said surface as aforesaid; that she would not have bought any of said property whatever under said contract of purchase if she had known that said coal had been mined, worked out and removed as it really was at the time of said purchase, as aforesaid; that her sole purpose in purchasing said property was to obtain all of the coal represented to her to be under the said 14½ acres of surface as aforesaid by said defendant in order

that she might open a mine thereon and remove said coal and sell the same in the market; that the said property with the coal mined and removed from under said 14½ acres of surface as aforesaid is wholly worthless to this plaintiff and cannot be used by her.''

The answer traversed the allegations of the petition. Other minor issues were raised between the plaintiff and defendant and between the defendant and the then owner of the purchase money notes, but these issues we need not notice because of our conclusion that the plaintiff failed to sustain the main isue against the defendant upon which her right of rescission alone depended.

To sustain her charge that the defendant had represented to her husband, C. N. Green, who acted as her agent in making the purchase, that there was good merchantable coal under all of the fourteen and one-half acres of surface, none of which had been worked out, mined or removed, her husband testified in substance that when the defendant, Charles Melton, showed him the land he took him over the surface of same and into the mine that Melton was then operating thereon. That the opening of the mine was on the thirty-acre tract but extended under the fourteen and one-half acre tract about seventy-five yards by an entry ten feet wide. That at the end of the entry the face of a vein of coal was exposed; that one or two side entries on the right hand side of the main entry had been opened and coal taken therefrom; that at the end of one of these side entries the defendant showed him an opening into an old, abandoned mine entry; that he showed him the opening of this entry known as the ''Jim Pace entry'' and represented to him that there was good, merchantable coal in the direction of the main entry clear across the fourteen and one-half acre tract of land.

The defendant denies that he made the latter representation to the plaintiff's husband or any representation whatever as to the amount of coal there was under the fourteen and one-half acres of land, and testifies that he showed plaintiff's husband not one but two places where his mine had broken through into old, abandoned entries, and that he showed him another opening of an entry under the fourteen and one-half acre tract besides the Jim Pace entry.

It is clear from the evidence of both of these witnesses that the defendant did not, as plaintiff claimed in

her petition, represent to her that there was coal under the whole of the fourteen and one-half acre tract of land because even according to the testimony for the plaintiff the defendant showed her evidences of at least one old, abandoned mine upon the tract which, according to the map and the evidence, must have informed the plaintiff that the coal had been removed from probably as much as one-fourth of the fourteen and one-half acre tract. Not only so, but the proof also shows that there was at least one and probably two large piles of slack, a fallen in' air hole, and other evidences plainly visible upon the land and of which plaintiff could not have failed to take notice that much coal had been removed from under the fourteen and one-half acre tract before plaintiff's purchase of the same.

There is evidence for the plaintiff by her two sons, her daughter and son-in-law, that the defendant shortly before the suit was instituted admitted that he had represented that there was a solid block of coal under the whole fourteen and one-half acre tract of land, but this defendant denies and in his denial is partially corroborated at least by the fact that it is undisputed that he told the plaintiff's husband before the sale was made of the old, abandoned Jim Pace mine and the fact that it extended from the opening nearly across the fourteen and one-half acre tract in an east and west direction to the mine that Melton was then operating.

After plaintiff bought the land she began to operate the mine under the fourteen and one-half acre tract and for about three months mined coal therefrom, when she, in extending the main entry, again encountered an old, abandoned entry. The amount of coal that she had taken from the land and sold is stated by her son, who was in charge of the mining operation, to have been something over 8,000 tons, which, according to the proof was worth in place approximately $2,000.00. According to the testimony of her husband there was only 8,403 bushels of coal taken by her from the mine, which would have been worth only about $84.03. No one else testified as to the amount so removed, and we cannot tell which is the correct statement. If the son is correct then plaintiff had removed from the fourteen and one-half acre tract of land coal of more value than she paid for that tract and the thirty acre tract upon which she lived, but if the husband is correct she had removed but a very

small amount of coal, and the mineral under the fourteen and one-half acre tract of land was of practically no value whatever, if, as she claims, she has removed all the coal that is there. But even of this latter contention there is no proof whatever, as she proves only that practically all of the merchantable coal has been removed from the fourteen and one-half acre tract up to the old, abandoned entries, but there is no proof whatever that there is no coal beyond these abandoned entries that have been encountered. She only proves that it would be impracticable to attempt to extend the present entries through the old, abandoned mines because of the expense and trouble of removing the debris therefrom and timbering the extended entries as would be necessary through the old entries.

There certainly was no proof whatever that the defendant, as charged in the petition, represented to the plaintiff that none of the coal had been removed from under the fourteen and one-half acre tract; in fact, just the contrary was proven.

We are therefore convinced that the plaintiff failed to sustain her charge that she was induced to purchase the property conveyed to her by the false representations of the defendant and the court did not err in refusing to rescind the contract. Plaintiff's husband, who, as her agent, examined the property and made the purchase for her, is an experienced miner and the evidence is convincing that Melton explained to him fully the fact that there were old, abandoned mines under the fourteen and one-half acre tract, and that plaintiff, upon this information and the examination made by her husband, took her chances as to the amount of coal that still remained thereunder.

Further confirmation of this fact is found in the deed itself, which only purports to convey to the plaintiff "all of the coal and mineral underlying fourteen and one-half acres of surface, &c.," and does not warrant or guarantee that there was coal under the whole of the described surface but conveyed only whatever of coal and minerals there might be under same.

Wherefore the two judgments appealed from, the one denying the rescission and the other ordering a sale of the land to satisfy the lien for the unpaid purchase money notes, are affirmed.